IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-368-FL(3)

| | |
|---|---|
| ROBERT L. BRADSHAW,<br>    Plaintiff,<br><br>    v.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' Cross-Motions for Judgment on the Pleadings **[DE's 17-18, 22-23]**. The time for either party to file a response or reply has expired and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB").

**Statement of the Case**

Plaintiff applied for DIB on January 16, 2004, alleging that he became unable to work on April 12, 2002 (Tr. 13). This application was denied at the initial and reconsideration levels of review. *Id.* A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated February 16, 2006. *Id.* at 13-21. The Social Security Administration's Office of Hearings

1

and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision. Id. at 4-6. Plaintiff filed the instant action September 12, 2006 [**DE-3**].

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was

2

applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: reflex sympathetic dystrophy; depression; chronic obstructive pulmonary disease; and hepatitis C. *Id.* In completing step three, however, the ALJ determined that none of these impairments, either singly or in combination, were severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id.*

The ALJ then proceeded with step four of his analysis and determined that Plaintiff

3

retained the residual functional capacity ("RFC") to perform a significant range of light work. *Id.* at 19. Based on this finding, the ALJ found that Plaintiff could not perform any of his past relevant work. *Id*. at 18. Finally, at step five the ALJ concluded that Plaintiff was not precluded from performing other work but rather that there were a significant number of jobs in the national economy that Plaintiff could perform *Id.* at 19. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of her decision. *Id.* at 20-21. In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

First, the ALJ noted that Plaintiff has reflex sympathetic dystrophy associated with a left knee injury and subsequent medial meniscecctomy. *Id.* at 14. However, the ALJ determined that this impairment failed to meet the provisions of any listing. Specifically, the evidence did not show that Plaintiff had: 1) persistent swelling; 2) autonomic instability; 3) abnormal hair growth; 4) osteoporosis; or 4) involuntary movements of the affected region of the initial injury. *Id.* at 14-15. Examination demonstrated that: 1) Plaintiff had normal strength in his legs; 2) no edema about his left knee; 3) only slight tenderness; and 4) normal deep tendon reflexes. *Id.* at 180-186. X-rays of Plaintiff's left knee showed only mild degenerative changes. *Id.* at 107-119.

Furthermore, the ALJ found that Plaintiff's depressive order was not severe enough to meet the requirements of any listing. *Id.* at 15. On the contrary, "general examinations show the [Plaintiff] exhibited normal judgment, orientation and memory with some evidence of a depressed mood on several occasions through May 2005." *Id.* at 15, 187-212. The ALJ

4

determined that the "evidence does not show the [Plaintiff] has marked limitations in activities of daily living, in maintaining social functioning, in maintaining concentration, persistence or pace, or repeated episodes of decompensation." *Id.* at 15.

The ALJ also determined that Plaintiff's chronic obstructive pulmonary disease fails to meet the requirements of any listing. *Id.* at 15. Examinations demonstrate that Plaintiff experienced occasional scattered wheezes. *Id.* at 187-212. On March 2, 2004 Dr. Gonzalo A. Fernandez observed that Plaintiff had "mild end expiratory wheezing at the bases bilaterally." *Id.* at 156. Otherwise his lungs were clear. *Id.* Evidence does not show that Plaintiff has undergone pulmonary function studies with resulting values which would meet any listing. *Id.* at 15.

With regard to Plaintiff's hepatitis C, the ALJ noted that "there is no evidence of esophageal varices, serum bilirubin at 2.5 mg per deciliter or greater, ascites, or hepatic encephalopathy . . ." *Id.* On March 2, 2004, Plaintiff had no complaints of abdominal pain, nausea, vomiting, weakness or malaise. *Id.* at 154.

In August 1994, Plaintiff underwent a partial medial meniscectomy and was subsequently diagnosed with reflex sympathetic dystrophy. *Id.* at 15, 91-104. On January 6, 1995, Dr. Wallace F. Andrew, Jr. recommended conservative treatment for Plaintiff. *Id.* at 15, 95. Dr. Andrew also stated on that date that Plaintiff could return to light duty work. *Id.*

A nurse practitioner[1] employed by Triangle Primary Care Associates in Wake Forest, North Carolina stated on April 15, 2002 that Plaintiff "is unable to stand for longer than 15 minutes . . . [h]e is unable to kneel for any period of time." *Id.* at 106. In making this statement, the nurse practitioner did not cite any medical records or clinical findings. *Id.* Accordingly, the ALJ noted "[t]his statement is not supported by any clinical findings, is conclusory in nature, and is not given great weight." *Id.* at 16.

Dr. Martha Parah completed an "attending physician's statement of disability" on June 10, 2002. *Id.* at 136-37. In this statement, Dr. Parah opines that Plaintiff is unable to: 1) stand more than 15 minutes; 2) walk without a cane; 3) sit more than 30 minutes; or 4) lift and carry objects. *Id.* She also reported that she had treated Plaintiff since December 1999 and that Plaintiff was disabled. *Id.* However, in reaching this conclusion Dr. Parah does not refer to any other medical records. With regard to this report, the ALJ stated that "this conclusion is not given great weight as it is not shown to be supported by repeated clinical findings on various examinations, but it is only a formed filled in by the physician." *Id.* at 16.

Plaintiff underwent a consultative examination by Dr. William Clark on January 17, 2003. *Id.* at 107-119. During this examination, Plaintiff exhibited: 1) normal motor strength in his right leg; 2) intact sensation; 3) normal reflexes; 4) a full range of motion in his ankle, knee and hip; 5) inability to bend his left knee more than 80 degrees; and 6) inability to squat.

---

[1] A nurse practitioner is not an acceptable medical source who can provide evidence to establish an impairment. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 11)(W.D.Va. 2006)(*citing* 20 C.F.R. § 416.913(a)).

*Id.* at 109. Plaintiff also walked with an antalgic gait. *Id.* Dr. Clark concluded that Plaintiff's reflex sympathetic dystrophy limited his standing, walking and squatting. *Id.* at 109-110. Finally, Dr. Clark stated "I do believe that [Plaintiff] is having every bit the pain he said he has." *Id.* at 109.

On March 2, 2004, Dr. Fernandez conducted another consultative examination of Plaintiff. *Id.* at 154-157. This examination showed that Plaintiff had tenderness in his left knee. *Id.* at 156. No crepitance or effusions were noted. *Id.* Dr. Fernandez concluded that Plaintiff "should be able to stand and walk two hours to maybe four hours and sit four to six hours in an eight-hour day with normal breaks." *Id.* Plaintiff did not have any manipulative limitations. *Id.* Due to Plaintiff's knee pain, Dr. Fernandez noted that Plaintiff had postural limitations on bending, stooping and crouching. *Id.* at 156-157. However, Dr. Fernandez did not opine that Plaintiff was incapable of performing these activities. *Id.* He also noted that Plaintiff could lift 10 to 20 pounds. *Id.* at 157.

Plaintiff sought treatment for left knee pain on February 21, 2005. *Id.* at 180-186. Motor examination revealed normal strength in Plaintiff's extremities and no edema was present in his left knee. *Id.* at 183. Slight tenderness to palpation was noted on the medial aspect of the patella with a decreased range of motion present. *Id.* Plaintiff was diagnosed with reflex sympathetic dystrophy. *Id.* at 185. He underwent a lumbar sympathetic block which alleviated his pain for 24 hours. *Id.*

Additional records from Triangle Primary Care show that Plaintiff sought treatment from June 10, 2002 to September 19, 2005. *Id.* at 189-212. He was diagnosed with: 1) reflex

7

sympathetic dystrophy; 2) depression; 3) hepatitis C; and 4) chronic obstructive pulmonary disease. *Id.* The ALJ made the following observations with regard to these records:

> mental status examinations showed the [Plaintiff] exhibited normal judgment, normal memory and he was oriented times three on all examinations. The [Plaintiff] experienced some fluctuation in mood from one examination to the next, as sometimes his affect was normal and at other times a depressed affect was noted. Similarly, while the [Plaintiff] was diagnosed with chronic obstructive pulmonary disease, examinations showed normal auscultation and percussion and normal effort in breathing.
> *Id.* at 16.

On October 5, 2005, a nurse practitioner employed by Triangle Primary Care summarized Plaintiff's impairments. *Id.* at 187-188. The ALJ made the following observations regarding this summary:

> [the] restrictions [noted by the nurse practitioner] are not supported by the findings present in the notes of the [Plaintiff's] examinations and are therefore conclusory, the letter states conclusions that are reserved for the Commissioner and the letter was written after the [Plaintiff] returned for treatment at the clinic in February 2005 after he had not been since August 2003. Additionally, the letter was not written by an examining physician. While it is unclear if a physician signed the letter, it was clearly prepared by a non-physician. For these reasons, it is not given controlling weight.
> *Id.* at 17.

An assessment of Plaintiff's RFC was completed on March 11, 2004. *Id.* at 158-165. Accordingly to this assessment, Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift and/or carry 10 pounds; 3) stand and/or walk about 6 hours in an 8-hour workday; and 4) sit for a total of about 6 hours in an 8-hour workday. *Id.* at 159. Plaintiff's ability to push and/or pull was noted to be limited in his lower extremities due to pain. *Id.* It was determined that Plaintiff could perform light work, with only occasional stooping,

8

kneeling, crouching and crawling. *Id.* at 159-160.

On a Psychiatric Review Technique form completed on March 23, 2004, Dr. William Oliver Mann opined that during the period April 1, 2002 through March, 2004, Plaintiff suffered from a non-severe depressive disorder which imposed only mild restrictions in his activities of daily living. *Id.* at 166-179.

The ALJ also considered Plaintiff's testimony concerning his impairments. Ultimately, the ALJ found that "although the evidence shows that the [Plaintiff] has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, the evidence does not support the [Plaintiff's] allegations of the intensity and persistence of such pain and other symptoms" *Id.* Specifically, the ALJ noted the following:

> [Plaintiff] testified he is unable to work due to swelling, stiffness and pain in his left knee, tiredness from hepatitis C, depression and pulmonary problems. The [Plaintiff] testified that medication helps with his depression but his combination of medications causes drowsiness and dry mouth. Daily activities for the [Plaintiff] were reported as staying around the house, playing with his dog, doing light cleaning at times, doing laundry, preparing easy meals, going to the grocery store with his daughter, and driving very little. These activities show the [Plaintiff] does not lead an entirely sedentary lifestyle. [Plaintiff] has not been instructed by an examining physician to limit his daily activities . . . The [Plaintiff] has actively sought out statements pertaining to disability, as he asked for a note attesting to disability when he sought treatment on February 21, 2005, and the examining physician reported he did not do disability ratings [*Id.* at 180-186]. Additionally, the [Plaintiff's] treating physician refused to give him narcotic pain medication and noted the pain clinic did not feel the [Plaintiff] was a candidate for long-term controlled substance use for his pain. [*Id.* at 187-212]. A secondary gain for seeking disability is also noted as the [Plaintiff's] 17 year old daughter will no longer obtain survivor benefits on her deceased mother's account when she attains age 18 . . . For the aforementioned reasons, the [Plaintiff's] subjective allegations are not considered fully

credible.
*Id.* at 17-18.

After weighing this evidence, the ALJ made the following determination regarding Plaintiff's RFC:

> The medical evidence supports the conclusion the [Plaintiff] is capable of engaging in light work activity, lifting and carrying 20 pounds occasionally, with a sit/stand option every 30 minutes . . .From a nonexertional standpoint, the [Plaintiff] is limited to performing simple, routine tasks in a low production environment as a result of his mental status.
> *Id.* at 17.

Based on this RFC, a vocational expert testified that there were other types of jobs that Plaintiff was able to perform, and that these jobs existed in significant numbers in the national economy . *Id.* at 19-20, 232-235.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support the ALJ's conclusions. Although Plaintiff lists several assignments of error, each assignment essentially contends that the ALJ improperly weighed the evidence before her. However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. <u>Craig</u>, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, his claims are meritless. Nonetheless, the Court will now briefly address Plaintiff's individual assignments of error.

## I. The ALJ did not fail to properly evaluate the medical evidence

Plaintiff first asserts that the ALJ failed to properly evaluate the medical evidence of record. It is the ALJ's responsibility to weight the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman, 2006 WL 2565245 at 8 (internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id.* (internal citations omitted). After reviewing the ALJ's opinion and the underlying record, the undersigned finds that substantial evidence supports each of the ALJ's findings. Furthermore, the ALJ adequately explained her rationale with regard to any evidence or medical opinions she discounted. Accordingly, this assignment of error is meritless.

## II. Plaintiff's subjective complaints were properly considered

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Moreover, it is generally not the role of this Court to substitute its own credibility determinations for those of the ALJ. Craig, 76 F.3d at 589. The ALJ's findings of fact demonstrate that she considered Plaintiff's limitations and impairments in assessing

Plaintiff's credibility (Tr. 13-21). Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support her ultimate determinations. For these reasons, this assignment of error is also without merit.

### III.  The ALJ did not err in determining Plaintiff's RFC

Plaintiff also argues that the ALJ posed an improper hypothetical question to the vocational expert in this matter.  An ALJ has "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question."  Koonce, 166 F.3d at 1209.  The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ."  France v. Apfel, 87 F. Supp. 2d  484, 490 (D. Md. 2000). Thus, this assignment of error essentially argues that the ALJ erred in determining Plaintiff's RFC.  An individual's RFC is what that person can still do despite physical and mental impairments.  20 C.F.R. §§ 404.1545, 416.945(a).  RFC is determined at the fourth step of the sequential evaluation process.

Here, the hypothetical question posed to the vocational expert by the ALJ was based on a RFC determination supported by substantial evidence and therefore it accurately reflected all of Plaintiff's limitations.  As with the first assignment of error, Plaintiff's argument consists primarily of highlighting evidence the ALJ weighed improperly.  Once again, Plaintiff asks this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. The undersigned declines to do so.

12

The medical record relied upon by the ALJ has already been summarized. This medical record contained substantial evidence to support each of the ALJ's findings, including his assessment of Plaintiff's RFC. Accordingly, the Court finds that the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for her resolutions of conflicts in the evidence. Because there is substantial evidence in the record to support the ALJ's RFC determination, this assignment of error is without merit.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Summary Judgment **[DE-17]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-22]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 31st day of May, 2007.

William A. Webb
U.S. Magistrate Judge